UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

OneBeacon America Insurance Company,

        Appellant,

v.                                                                          Civ. No. 06-167 (JNE)
                                                                         ORDER

A.P.I., Inc.,

        Appellee.

OneBeacon America Insurance Company (OneBeacon) appeals from an order of the United States Bankruptcy Court for the District of Minnesota confirming a plan of reorganization of A.P.I., Inc. (API). For the reasons set forth below, the Court affirms the bankruptcy court's confirmation of the plan.

## I.    BACKGROUND

Since the 1920s, API has sold, distributed, and installed insulation. Until August 1973, the insulation contained asbestos. Beginning in 1982, API was named as a defendant in personal injury lawsuits alleging asbestos-related diseases. API was typically a secondary defendant and settled the claims against it for modest amounts. In 2001, however, a jury returned a substantial verdict against API. API's primary insurers informed API that the verdict exceeded API's remaining coverage, and API's excess insurers denied coverage. Shortly thereafter, API started to explore reorganization by creating a trust pursuant to 11 U.S.C. § 524(g) (2000) to respond to asbestos claims.

After extensive negotiations with asbestos claimants, API filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and a pre-packaged plan of reorganization. Several insurers initially objected to the plan's confirmation. Following several modifications to the plan, the bankruptcy court issued its "Order Confirming Third Amended Plan of

Reorganization of A.P.I. Inc. (November 21, 2005) as Modified at Confirmation" (Confirmation Order).  Briefly, the plan as modified (Modified Plan) establishes a trust that assumes liability for asbestos-related claims against API and responsibility for payment of the claims pursuant to trust distribution procedures (TDP).  The trust succeeds to API's rights in asbestos insurance policies.  The Modified Plan provides injunctive relief to API and insurers that settle with API.

When the bankruptcy court confirmed the Modified Plan, all insurers except OneBeacon had withdrawn their objections.  OneBeacon now appeals from the Confirmation Order.

## II.   DISCUSSION

In an appeal from a bankruptcy court's order, a district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo.  *In re Reynolds*, 425 F.3d 526, 530 (8th Cir. 2005).  On appeal, OneBeacon argues that the bankruptcy court erred in ruling that:  (1) API is authorized to assign its insurance policies to the trust notwithstanding the policies' anti-assignment provisions; (2) confirmation would not alter OneBeacon's rights or duties under the policies; (3) OneBeacon lacks standing to assert various objections to confirmation; and (4) the Modified Plan complies with 11 U.S.C. § 524(g)(2)(B)(i)(II) and (III).

**A.**   **Assignment**

Under the Modified Plan, the trust created by the Modified Plan succeeds to API's rights in asbestos insurance policies:

> Pursuant to Bankruptcy Code sections 541(c) and 1123(a)(5)(B), on the Effective Date, the Trust shall succeed to all of Debtor's Asbestos Insurance Rights in the Asbestos Insurance Policies without regard to any state law limitations on the assignment of such policies, which limitations, if any, shall be of no force and effect in respect to the revesting of such rights in the Trust.  No documents of transfer shall be required to effectuate this succession, and the Trust shall be fully authorized to act in its own name, or in the name of the Debtor, to enforce any right, title or interest of the Debtor in the Asbestos Insurance Rights.  Pursuant to Bankruptcy Code section 524(g), the Trust is, and shall be deemed to be, for all purposes, including but not limited to for the purpose of insurance and

> indemnity, the successor to API in respect to Asbestos Claims and coverage under the Asbestos Insurance Policies.

In the Confirmation Order, the bankruptcy court stated that the vesting of API's policies in the trust could take place without regard to their anti-assignment provisions:

> The Debtor's policies, rights under the policies, or proceeds derived from Asbestos In-Place Insurance Coverage . . . shall, on the Effective Date, be vested in the trust, notwithstanding any state law or private contractual provisions to the contrary, and such vesting or rights shall neither diminish nor impair the enforceability of any of the Asbestos Insurance Policies against a party that is not a Released Party, and any anti-assignment contained in any such Asbestos Insurance Policy shall not be enforced in connection with the foregoing.

OneBeacon asserts that the bankruptcy court erred in ruling that the policies may be assigned to the trust without OneBeacon's consent.

A debtor's estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (2000). "[A]n interest of the debtor in property becomes property of the estate under subsection (a)(1) . . . of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law that restricts or conditions transfer of such interest by the debtor . . . ." *Id.* § 541(c)(1)(A). Accordingly, API's asbestos insurance policies are part of API's estate. *See In re Titan Energy, Inc.*, 837 F.2d 325, 328-29 (8th Cir. 1988) (holding that insurance policies are property of debtor's estate "under the expansive definition set forth in section 541 of the Bankruptcy Code").

A debtor's estate succeeds to only such title and rights as the debtor had when the petition for bankruptcy was filed. *In re Schauer*, 835 F.2d 1222, 1225 (8th Cir. 1987); *In re N.S. Garrott & Sons*, 772 F.2d 462, 467 (8th Cir. 1985). "State law defines the debtor's interest in property which becomes part of the bankruptcy estate." *Schauer*, 835 F.2d at 1225; *see N.S. Garrott*, 772 F.2d at 466 ("The nature and extent of the debtor's interest in property are determined by state law."). In *Gopher Oil Co. v. America Hardware Mutual Insurance Co.*, 588 N.W.2d 756 (Minn.

3

Ct. App. 1999), the Minnesota Court of Appeals considered whether a nonassignment-without-consent clause in an insurance policy was enforceable against a successor corporation that acquired a predecessor's assets and liabilities. *Id.* at 763. After remarking that "[c]ourts in other jurisdictions have refused to enforce such a clause when a successor corporation's acquisition of a predecessor's assets transfers the predecessor's losses," the court of appeals discussed the purpose served by a non-assignment clause: "The purpose of a non-assignment clause is to protect the insurer from an increase to the risk it has agreed to insure. But when events giving rise to an insurer's liability have already occurred, the insurer's risk is not increased by a change in the insured's identity." *Id.* (citations omitted). The court of appeals explained:

> An assignment of a loss does not expand the risk to cover other activities; it only allows a change in the identity to reconnect the policy's coverage to the insured loss. This transfer of liability addresses the problem created when an insurer becomes liable at the time there is an accident or occurrence covered under the policy but the loss is enforced against a successor owner.
>
> The great majority of courts follow this distinction between risk and loss and allow an insured to assign a loss.

*Id.* (citations omitted). Ultimately, the court of appeals found the insurer's argument against the majority rule "unavailing." *Id.*

In this case, API asserts that it may assign its asbestos insurance without regard to anti-assignment clauses because the events that may give rise to an insurer's liability have already occurred. API ceased sale or installation of products that contain asbestos more than thirty years ago, and OneBeacon's predecessor issued policies to API from in the 1950s and 1960s. OneBeacon nevertheless asserts that the operation of the trust created by the Modified Plan will subject OneBeacon to increased risk by altering OneBeacon's rights and duties under the policies. As explained below, the bankruptcy court did not err in rejecting OneBeacon's challenges to the trust's operation. By assuming API's liability for asbestos claims and

4

succeeding to API's rights in asbestos insurance, the trust unites API's insurance coverage with the insured loss.  Consequently, OneBeacon may not rely on an anti-assignment clause to prevent the trust from succeeding to API's rights in asbestos insurance.  *See id.*  The Modified Plan therefore could vest API's rights to asbestos insurance in the trust.  *See* 11 U.S.C. § 1123(a)(5)(B) (2000) (authorizing a plan to "transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan"); *Holywell Corp. v. Smith*, 503 U.S. 47, 55 (1992) (stating that the "Bankruptcy Code expressly permits" a plan to create a "separate and distinct trust holding the property of the estate").  For these reasons, the Court concludes that the bankruptcy court did not err in ruling that the vesting of API's asbestos insurance policies in the trust could take place without regard to their anti-assignment provisions.

**B.     Alteration of rights or duties**

OneBeacon next argues that the bankruptcy court erred in ruling that confirmation would not alter OneBeacon's rights or duties under the policies.  OneBeacon asserts that the Modified Plan, on its face, prejudices its rights under "no-action" clauses, "cooperation" clauses, and claims-handling provisions.  The Modified Plan contains several provisions that respond to OneBeacon's concerns.  The Modified Plan provides that its estimation provisions have no effect on "no action" provisions:

> The non-binding estimation provisions of this Plan shall have no effect upon any "no action" provisions contained in any applicable Asbestos Insurance Policy to the extent any such provision remains enforceable by an Asbestos Insurance Company under applicable non-bankruptcy law, with the result that, to the extent any such "no action" provision remains enforceable by an Asbestos Insurance Company, such Asbestos Insurance Company shall have no liability to the Debtor or the Trust with respect to any Asbestos Claim until entry of judgment by a court of competent jurisdiction or written settlement agreement approved by such insurer.

With regard to API's duty to cooperate, the Modified Plan states that "each Asbestos Insurance Company shall be entitled to . . . the cooperation of the debtor in defense of the claim in all other forums."  The Modified Plan also states:  "Notwithstanding the revesting of the Debtor's Asbestos Insurance Rights in the Asbestos Insurance Policies to the Trust, the Debtor shall not be relieved of its continuing duties, if any, under any Asbestos Insurance Policies, and shall continue to perform such duties as required by applicable law."  As to OneBeacon's claims-handling rights, the Modified Plan provides that "[t]he consensual estimation only for purposes of distribution by the Trust shall not be a finding or fixing of the amount of any Asbestos Claim with any binding legal effect other than for that purpose," and that "the fact that the claim has been so estimated for distribution purposes will not have any res judicata or collateral estoppel effect for any other purpose and shall not constitute a binding determination on any issue or the creation of a liquidated non-bankruptcy claim."  In addition, the Modified Plan states:

> The estimation for distribution purposes only . . . shall be wholly without prejudice to any and all rights of the parties in all other contexts or forums and shall not be deemed to be a triggering event for liability under any Asbestos Insurance Policy.  To the extent a claim is pursued under applicable non-bankruptcy law, it may be pursued for its full amount according to proof, and the Debtor, the Trust and each Asbestos Insurance Company shall retain any and all defenses that may exist in respect to such Asbestos Claim.  The duties and obligations of each Asbestos Insurance Company under the Asbestos Insurance Policies shall not be impaired, altered, reduced or diminished by (1) the discharge of all obligations and liabilities of the Debtor, (2) the assumption of responsibility and liability for all Asbestos Claims by the Trust, or (3) releases granted to Released Non-Debtor Parties under the Plan, and each Asbestos Insurance Company shall be entitled to (a) consent to any settlement of the asserted claim in all other contexts, (b) the cooperation of the Debtor in defense of the claim in all other forums, (c) manage the course of the litigation in all other forums, and (d) such other rights as are provided under the terms of their respective Asbestos Insurance Policies as if the Asbestos Claim had never been estimated for distribution purposes in connection with the Reorganization Case, all to the extent, if any, provided under the respective terms of their policies and applicable non-bankruptcy law after taking into account an Asbestos Insurance Company's actions and inactions in respect to its duties and obligations under its policies.

6

In short, the provisions cited above reveal that the Modified Plan does not prejudice OneBeacon's rights under "no-action" clauses, that the Modified Plan requires API to cooperate with OneBeacon, and that the Modified Plan preserves OneBeacon's claims-handling rights. Accordingly, the Court concludes that the bankruptcy court did not err in ruling that the Modified Plan does not alter OneBeacon's rights or duties.

OneBeacon nevertheless asserts that the bankruptcy court should have considered evidence outside of the Modified Plan when determining whether the Modified Plan altered its rights and subjected it to increased risk. The bankruptcy court regarded the issue before it as one that "concern[ed] the legal implications of the plan on its face." Thus, the bankruptcy court discerned "no need to resort to facts to dispose of [the] issues." Principles of contract interpretation apply to the interpretation of a reorganization plan. *In re Texas Gen. Petroleum Corp.*, 52 F.3d 1330, 1335 (5th Cir. 1995). "Where a written contract is unambiguous, the court must deduce the parties' intent from the language used." *Metro. Sports Facilities Comm'n v. Gen. Mills, Inc.*, 470 N.W.2d 118, 123 (Minn. 1991). Here, OneBeacon does not point to any ambiguity in the Modified Plan. Consequently, the bankruptcy court did not err in interpreting the Modified Plan without resort to extrinsic evidence. *See id.*

**C.    Standing**

OneBeacon contends that the bankruptcy court erred in ruling that OneBeacon lacked standing to raise the issues of the Modified Plan's treatment of asbestos-related personal injury claims and the plan's compliance with 11 U.S.C. § 524(g). Even if the bankruptcy court incorrectly held that OneBeacon lacked standing on these issues, OneBeacon lacks standing to assert them on appeal. *See In re ANC Rental Corp.*, 280 B.R. 808, 815 (D. Del. 2002), *aff'd*, 57 F. App'x 912 (3d Cir. 2003).

"Appellate standing in bankruptcy cases is more limited than standing under Article III or the prudential requirements associated therewith." *In re PWS Holding Corp.*, 228 F.3d 224, 248-49 (3d Cir. 2000). "Standing to appeal in a bankruptcy case is limited to 'persons aggrieved' by an order of the bankruptcy court." *In re Combustion Eng'g*, 391 F.3d 190, 215 (3d Cir. 2004); *see In re Canal St. Ltd. P'ship*, 269 B.R. 375, 379 (B.A.P. 8th Cir. 2001) ("To appeal from an order of the bankruptcy court, the appellants must have been directly and adversely affected pecuniarily by the order."). To qualify as a "person aggrieved," a litigant must show that the bankruptcy court's order diminishes the litigant's property, increases the litigant's burdens, or impairs the litigant's rights. *In re Marlar*, 267 F.3d 749, 752 n.1 (8th Cir. 2001); *In re Andreucetti*, 975 F.2d 413, 416 (7th Cir. 1992); *In re Canal St.*, 269 B.R. at 379.

With regard to the Modified Plan's treatment of asbestos-related personal injury claims, OneBeacon asserts that: (1) the TDP are lax; (2) the TDP include inflated matrix values; (3) there are inadequate safeguards against fraudulent claims; (4) the TDP are discriminatory; and (5) the asbestos plaintiffs' bar has undue influence over the trust. OneBeacon, however, has no asbestos-related personal injury claim. Moreover, as set forth above, the Modified Plan does not prejudice OneBeacon's rights under "no action" clauses, "cooperation" clauses, and claims-handling provisions. Accordingly, the Modified Plan's treatment of asbestos-related personal injury claims does not diminish OneBeacon's property, increase OneBeacon's burdens, or impair OneBeacon's rights. The Court therefore concludes that OneBeacon lacks standing on appeal to object to the treatment of asbestos-related personal injury claims.

OneBeacon next argues that Modified Plan does not comply with the section 524(g) insofar as the section requires the trust "to be funded in whole or in part by the securities of [API] and by the obligation of [API] to make future payments, including dividends." 11 U.S.C.

§ 524(g)(2)(B)(i)(II). OneBeacon also argues that the Modified Plan does not comply with the requirement in section 524(g) that the trust "own, or by the exercise of rights granted under such plan would be entitled to own if specified contingencies occur, a majority of the voting share of" API. *Id.* § 524(g)(2)(B)(i)(III). Having no claim against the trust,[1] OneBeacon lacks standing to raise these arguments on appeal. *See In re Combustion Eng'g*, 391 F.3d at 248.

### III.  CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The bankruptcy court's Confirmation Order is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  May 25, 2006

s/ Joan N. Ericksen<br>
JOAN N. ERICKSEN<br>
United States District Judge

---

[1] OneBeacon argues that it has standing to assert the Modified Plan's failure to comply with section 524(g) because the Modified Plan enjoins OneBeacon from pursuing a contribution claim that it might have against insurers that settled with API. The Modified Plan channels such claims to the trust. The bankruptcy court ruled that OneBeacon lacked standing because OneBeacon had not demonstrated "the factual predicates and the ability to prove actual past financial prejudice that would be necessary to support a contribution claim." Having ruled that OneBeacon had no prepetition contribution claim, the bankruptcy court concluded that OneBeacon "lack[ed] standing to raise this issue in objection to the Plan." Having failed to offer any support for a contribution claim, OneBeacon cannot demonstrate that the injunctive relief contemplated by the Modified Plan directly and adversely affects its pecuniary interests. *See In re Coho Energy Inc.*, 395 F.3d 198, 203 (5th Cir. 2004) ("A remote possibility does not constitute injury under [the] 'person aggrieved' test."); *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 743 (3d Cir. 1995) ("We reject [the insurer's] contention that the contingency of its exposure is irrelevant to the question of standing."). Accordingly, the Modified Plan's injunctions do not confer standing on OneBeacon to object to the Modified Plan's alleged failure to comply with section 524(g).